UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS T. BAY,<br><br>    Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:17-cv-01034-TLN-KJN<br><br>FINDINGS AND RECOMMENDATIONS |

  Plaintiff Dennis Bay seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence in the record.  (See ECF No. 13.)  The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment.  (ECF No. 14.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 22.)

  After carefully considering the record and the parties' briefing, the court GRANTS plaintiff's motion for summary judgment, DENIES the Commissioner's cross-motion for

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

1

summary judgment, and REMANDS the action for further proceedings.

I.  BACKGROUND

Plaintiff was born on October 29, 1951, and completed high school.[2] (Administrative Transcript ("AT") 228, 370.) On October 5, 2012, plaintiff applied for DIB, alleging that his disability began on July 1, 2012. (AT 21, 39, 228.) Plaintiff claimed that he was disabled due to being bipolar, and subject to panic, anxiety, depression, lumbar spine condition, high blood pressure, and hip pain. (AT 82.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on April 15, 2015. (AT 35-81.) The ALJ subsequently issued a decision dated July 28, 2015, determining that plaintiff had not been under a disability as defined in the Act, from July 1, 2012, through the date last insured. (AT 21-30.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 15, 2017. (AT 1-3.) Plaintiff subsequently filed this action on May 16, 2017, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly weighed the medical opinion evidence; (2) whether the ALJ failed to make a proper step three determination; (3) whether the ALJ improperly discounted the credibility of plaintiff and his wife; (4) whether the ALJ's residual functional capacity ("RFC") determination was without substantial evidence support; and (5) whether the ALJ erred in finding that plaintiff could perform past relevant work.[3]

III.  LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

2

as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[4] Preliminarily, the ALJ determined that plaintiff last met the

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a). A five-step sequential evaluation governs eligibility for benefits under the program. See 20 C.F.R. §§ 404.1520, 404.1571–76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

    Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

3

insured status requirements of the Act on September 30, 2012. (AT 23.) At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity from July 1, 2012, through the date last insured. (Id.) At step two, the ALJ found that plaintiff had the severe impairments of bipolar disorder and anxiety disorder. (Id.) However, at step three the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 24.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform a full range of work at all exertional levels, except that he had the following non-exertional limitations:

> he was able to receive, remember, understand and carry out simple job instructions and occasionally detailed instructions, but not complex instructions. He was able to interact with the general public, coworkers and supervisors; make adjustments to simple changes in the workplace; and make simple workplace judgments.

(AT 25.) At step four, the ALJ determined that plaintiff was able to perform past relevant work as a vending machine attendant and a vending machine coin collector, through the date last insured. (AT 29.) Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from July 1, 2012, through September 30, 2012. (AT 30.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

The undersigned concludes that the ALJ's decision is generally not sufficiently explained nor supported by substantial evidence in the record. Of note, the ALJ did not provide adequate citation to the administrative record throughout his decision, thereby undermining his reasoning and conclusions. (See AT 23-30.) Fundamentally, however, remand is warranted based on the ALJ's treatment of the medical evidence in the record.

1. *Whether the ALJ improperly weighed the medical opinion evidence*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195,

---

process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, plaintiff challenges how the ALJ weighed the medical evidence, related to plaintiff's mental impairments. (See ECF No. 13.) Specifically, plaintiff argues that the ALJ improperly rejected the opinion of plaintiff's treating psychiatrist, Michael J. Patton, M.D. while impermissibly relying on the opinion of examining consultative psychologist Troy Ewing, Psy.D. (ECF No. 13 at 19-21, 28-32.)

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

Plaintiff first saw Dr. Patton in 1983, and continued to see him off and on through at least March 2015. (See AT 439, 529-530.) The record includes extensive treatment notes (AT 338-66, 408-23, 549-53), and three opinions (AT 337, 426-49, 529-30) from Dr. Patton.

On March 15, 2013, Dr. Patton listed plaintiff's diagnoses as bipolar disorder II, chronic depression and generalized anxiety disorder, chronic, with infrequent panic attacks. (AT 337.) He further opined that plaintiff's prognosis was "very poor based on failures of many medication regimens" and that "mentally and emotionally p[atient] has decreased attention-concentration span, poor short term memory, extreme depression, diminished motivation, hyposomnia, low energy and interests levels, and can't function persistently." (Id.)

Then, on May 5, 2014, Dr. Patton provided a Psychiatric Review Technique and a Mental Medical Source Statement. (AT 426-49.) In the Psychiatric Review Technique, Dr. Patton opined that plaintiff had an affective disorder that met the "A", "B", and "C" criteria of Section 12.04 of the Listing for Affective Disorders. (See AT 426-44.) Importantly, Dr. Patton included detailed notes explaining his findings. (AT 439-44.) Of note, he indicated that

> Despite treatment with all available and recommended medications and psychotherapy the pt's depression was unresolved, and the pt could not function at work or at home. I considered him disabled in March, 2012.

(AT 442.)

In the Mental Medical Source Statement, Dr. Patton opined that plaintiff has a poor ability to understand and remember detailed or complex instructions; to carry out instructions; to attend and concentrate; to interact with supervisors, coworkers, or the public; to adapt to changes in the workplace; and to be aware of normal hazards and react appropriately. (AT 448-49.) Dr. Patton explained that plaintiff's bipolar depression and generalized anxiety disorder have caused short term memory loss; diminished attention-concentration span; poor focus; lack of motivation; and cognitive disfunction. (Id.)

Subsequently, on March 20, 2015, Dr. Patton provided another opinion, explaining his treatment notes:

////

6

> In my notes on Mr. Dennis Bay, the term "mood stable," does not indicate that the patient is able to work either part or full time, [or] that his mood is normal or euthymic. It simply means that there has been no change in his mood from previous visits.
>
> Since late 2011 or early 2012, Mr. Bay has been severely depressed, increasingly passively suicidal and had little interest or pleasure in social, occupational or other important areas of functioning. Also, he has had chronic fatigue, daily insomnia, feelings of worthlessness, hopelessness and excessive inappropriate guilt concerning his failures and his care of his wife.
>
> Because of nearly daily psychomotor retardation Dennis has a diminished ability to think, concentrate, impaired short term memory and is indecisive.
>
> Due to the above signs and symptoms Mr. Bay has not been able to sustain even part time work since late 2011-early 2012. His emotional instability, mood swings, need for medication adjustments, (which have been unsuccessful), and now severely disabling depression and severe passive suicidal ideation have completely disabled him.

(AT 529-30.)

Dr. Patton's opinions are ostensibly contradicted by the opinion of examining psychologist Troy Ewing, Psy.D.[6] as well as the opinions of the State Agency reviewing psychologists Robert Liss, Ph.D. and Elizabeth Covey, Ph.D. (AT 90-91, 115-16, 368-73.) The ALJ assigned some weight to Dr. Ewing's opinion and significant weight to the opinions of Drs. Liss and Covey. (See AT 28-29.)

The ALJ clearly erred by relying on Dr. Ewing's opinion because plaintiff's medical records were not provided to Dr. Ewing's office for review. (See AT 368.) The Commissioner's regulations mandate that a consultative examiner be provided any necessary background information about a plaintiff's condition. See 20 C.F.R. § 404.1517. Thus, Dr. Ewing's opinion, which is based solely on a one-time examination, cannot constitute substantial evidence justifying the rejection of the opinions from plaintiff's long-term treating psychiatrist. See Jackson v.

---

[6] Plaintiff asserts that the ALJ erred in relying on this opinion because it was written by Petra Glenesk, M.A. who is not an acceptable medical source. (See ECF No. 13 at 29.) The Commissioner counters that M.A. Glenesk's involvement is inconsequential because the opinion was countersigned by Dr. Ewing who is an acceptable medical source. (See ECF No. 14 at 25.) The court need not resolve this issue, as the opinion is otherwise flawed, as explained.

Astrue, No. CIV S-10-2401 EFB, 2012 WL 639304, at *4 (E.D. Cal. Feb. 24, 2012); see also Lester, 81 F.3d at 831.

Moreover, it is not clear that the opinions of Drs. Liss and Covey constitute sufficient evidence to contradict Dr. Patton's opinions, as Drs. Liss and Covey opined in 2013, prior to Dr. Patton's 2014 Medical Source Statement and his 2015 explanatory opinion. (See AT 90-91, 115-16, 448-49, 529-30.) Importantly, in 2015, Dr. Patton explained how he used the phrase "mood stable" in his records (AT 529-30)—an explanation that could have reasonably affected the opinions of Drs. Liss and Covey.

However, the court need not decide whether the ALJ was required to provide specific and legitimate reasons or clear and convincing reasons for discounting Dr. Patton's opinions because the ALJ's proffered reasons are insufficient under either standard.

The ALJ "assign[ed] little weight to Dr. Patton's assessments as to the claimant's extremely diminished capacity [concluding that] such conclusions are not supported by the claimant's history of a stable marriage of over 20 years and working consistently throughout his adult years and later operating his own business into his early 60's despite a dysfunctional family atmosphere in childhood." (AT 28.)

First, the ALJ fails to explain how maintaining a 20 year marriage has any bearing on plaintiff's mental impairments and ability to work. It is unclear how being married makes one able to function in the workplace, notwithstanding a psychiatrist's findings to the contrary. Indeed, if anything, the record tends to demonstrate that plaintiff receives tremendous help from his wife on a daily basis, which supports a finding that plaintiff is not able to function sufficiently on his own in the workplace. (See, e.g., AT 61 (wife prepares food for plaintiff to warm up throughout the week), 300 (wife has to make sure the dog is fed, even when plaintiff is responsible for feeding the dog), 301 (wife has to remind plaintiff to do his laundry), 302 (wife has to remind plaintiff to pay bills on time), 303 (wife attends important meetings with plaintiff).)

Second, the ALJ fails to explain how plaintiff's work history discounts Dr. Patton's opinion. Importantly, Dr. Patton repeatedly opined that plaintiff became disabled in late 2011 or early 2012 (see AT 442, 530) and plaintiff claims that his disability began on July 1, 2012 (AT

21, 39, 228). Additionally, the ALJ concluded that plaintiff had not engaged in any substantial gainful activity since July 1, 2012. (AT 23.) Thus, it is unclear how plaintiff's work history prior to July 1, 2012, is a legitimate reason to undermine Dr. Patton's opinions. The ALJ does not point to any inconsistent or contradictory medical evidence in the record that undermines Dr. Patton's opinions that plaintiff became disabled around the very time he ceased working. The ALJ may not substitute his own unsupported lay opinion for that of a medical professional's supported opinion. See Lester, 81 F.3d at 830-31.

Therefore, the ALJ failed to provide specific and legitimate reasons for discounting the opinions of Dr. Patton.

2. *Plaintiff's remaining challenges to the ALJ's decision*

Because the ALJ erred when weighing the medical evidence, his decision is fundamentally flawed. As a result, the court need not consider the rest of plaintiff's contentions, since the ALJ will have to reconsider these issues on remand. At the same time, the court notes a few issues that the ALJ ought to explicitly address on remand.

First, at step three, the ALJ opined that "no treating of examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (AT 25.) This statement appears to be demonstrably untrue, as Dr. Patton opined that plaintiff meets the listings for Affective Disorders. (See AT 426-44.)

Second, the ALJ confusingly found plaintiff's wife's testimony to be "essentially credible" yet simultaneously discounted her statements for the same reasons that he discounted plaintiff's credibility. (See AT 26.)

Third, the ALJ discounted plaintiff's credibility, in part, due to a finding that "[m]edication regimens have been successful at managing highs and lows." (AT 27.) Yet, the ALJ failed to discuss—or even acknowledge—Dr. Patton's repeated findings that plaintiff's various medication regimens and adjustments had been unsuccessful. (See AT 337, 442, 530.)

V. CONCLUSION

Although the ALJ clearly erred, the court cannot say that the record leaves no doubt as to whether plaintiff is in fact disabled. As such, the court recommends remand for further

9

proceedings and not for an award of benefits. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103-04 (9th Cir. 2014) (in determining whether to remand for further proceedings or for an award of benefits, a court "consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules").

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) be GRANTED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 22) be DENIED
3. The action be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).
4. Judgment be entered for plaintiff.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

Dated: August 22, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

14/ss.bay.1034.f&r msj